UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Paeng See,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Commissioner of Social Security,<br><br>　　　　　　Defendants. | No. 1:24-cv-01516-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO REMAND FOR FURTHER PROCEEDINGS, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**OBJECTIONS DUE WITHIN 14 DAYS**<br><br>**(Doc. 15, 17)** |

**I.     Introduction**

Plaintiff Paeng See appeals a final decision of the Commissioner of Social Security denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act.[1]

**II.    Factual and Procedural Background**

On March 11, 2021, Plaintiff applied for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (Act), 42 U.S.C. § 1382c. The application was denied initially on August 18, 2021, and on reconsideration on December 9, 2021. The ALJ held a hearing

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge. Docs. 6, 8.

1

on October 25, 2023. AR 33–64. The ALJ issued an unfavorable decision on February 22, 2024. AR 17–27. The Appeals Council denied review and this appeal followed.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is evidence that could lead a reasonable mind to accept a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The court must consider the record as a whole and may not affirm by isolating supporting evidence. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability, 2- whether the claimant had medically determinable "severe impairments," 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, 4- whether the

claimant retained the residual functional capacity ("RFC") to perform past relevant work, and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. See, 20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of March 11, 2021.  AR 19.  At step two, the ALJ found that Plaintiff had the following severe impairments: ovarian abscess with colostomy,[2] diabetes, anemia, post-traumatic stress disorder, and major depressive disorder.  20 CFR 416.920(c).  AR 20.  The ALJ also found that claimant had the following non-severe impairments: hypothyroidism and angina pectoris.  AR 20.  Finally at step two, the ALJ found that Plaintiff's headaches, sleeping disorder, right hand impairment and back pain were not medically determinable impairments.  AR 20.

At step three, the ALJ found that Plaintiff had no impairments or combination thereof that met or medically equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 20–22.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded the claimant had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except with the following limitations:

> The claimant may frequently stoop and occasionally crouch. The claimant must avoid concentrated exposure to hazards, such as unprotected heights and moving machinery. The claimant can understand, remember, and carry out simple work instructions. The claimant is limited to occasional changes in a routine work setting. The claimant may not perform production work, such as assembly line work or work requiring hourly quotas. AR 22–25.

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a hand packager (medium exertional capacity).  AR 25.  At step five, in reliance on the Vocational Expert's

---

[2] The colostomy was reversed in September 2022, and an ileostomy bag was installed.  AR 48.

3

testimony, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Plaintiff could perform: Cashier II, Sales Attendant, and Housekeeping Cleaner. AR 26–27. Accordingly, the ALJ concluded that Plaintiff was not disabled at any point since the SSI application date of March 11, 2021. AR 27.

## V.  Issues Presented

Plaintiff asserts one claim of error: that the mental residual functional capacity determination (MRFC) was not supported by substantial evidence. MSJ at 4.

### A.  RFC Generally; Medical Opinions; Testimony

#### 1.  Legal Standard

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate the pre-existing hierarchy of medical opinions. The revised regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id.* Even under the new regulations, an ALJ cannot reject an examining or treating

doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, other factors considered are: 1- daily activities; 2- the location, duration, frequency and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other symptom;  and 7- Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2. **Summary of Medical Evidence**

Plaintiff had ovarian abscess surgery in 2018 (Exhibit B11F/1). She had a colostomy sometime during the period of 2017-2018 and a colostomy (stoma) bag was installed, though the exact date is not indicated (Ex. B9F/2). The colostomy was reversed in September 2022[3] and the colostomy bag was removed at that time (AR 48; Exhibit B13F/4).  During the very same September 2022 surgical procedure in which the colostomy was reversed, an ileostomy was simultaneously performed, and an ileostomy bag (stoma) was installed.  (AR 48; Exhibit B14F/3).

These events and procedures caused significant abdominal pain to Plaintiff (Exhibit B19F/219). Plaintiff's diabetes was well-controlled without insulin injections. (Exhibit B17F/51, 59). Her diabetes medication caused headaches. Plaintiff had anemia which cased fatigue (Exhibit B17F/59). Plaintiff underwent blood transfusions, but infrequently. (Exhibit B6F/59). As for her mental impairments, Plaintiff often had depressed mood, and had nightmares and anxiety related to her sister's death and her brother's suicide by gunshot (Exhibit B8F/2, B12F/5). Plaintiff experienced infrequent mild hallucinations. (Exhibit B12F/5). Plaintiff's cognitive functions were sometimes noted as intact, as was her memory (Exhibit B12F/6), though at other times less so as

---

[3] During the period prior to the ileostomy placement in September 2022, benefits would be payable retroactively to the date when Plaintiff became disabled, but no earlier than the date she filed her SSI claim on March 11, 2021. Specifically, SSI claims, unlike SSDI claims, are not retroactive to the date of disability onset, but only retroactive to the date the application for benefits was filed, at the earliest.  20 C.F.R. §§ 404.621, 416.335.

noted below.  Her intellect was noted to be average (Exhibit B12F/6), and she had good insight and judgment (Exhibit B18F/36).

### 3.    Summary of Plaintiff's Testimony

Plaintiff states that her 21-year-old son stays home with her all day and her husband takes her children to and from school. AR 43. She says she can't work because of weakness, pain, depression and anxiety, and cannot sleep at all since her sister passed.  She says she gets 1 hour of continuous sleep before she wakes up, and 2-3 hours total per night due to anxiety, arm pain and her stoma bag(s).[4]  Id. at 43–55.  The colostomy bag caused her pain and skin irritation, while her ileostomy is more of a liquid which causes significant burping and gas.  Id.  The colostomy bag required hourly emptying when it was in place up until September 2022 when it was removed.  Id.  The ileostomy bag, which was placed in September 2022, worsened symptoms and required gases to be released every 30 minutes (AR 48–49).[5]  She does not take care of her household or prepare meals and does minimal light work like taking the trash out.

### 4.    Summary of Consultative Examination

Dr. Shertock, PhD, conducted a consultative examination of Plaintiff on July 6, 2021 at the agency's request. AR 482–85. At the exam Plaintiff reported migraines, hypothyroidism, diabetes, fatigue, weakness, dizziness, neuropathy in her hands and feet, use of a colonoscopy bag (which was replaced in September 2022 with an ileostomy bag) requiring constant replacing, PTSD since

---

[4] Again, Plaintiff had a colostomy some time in 2017-2018 and a colostomy (stoma) bag was installed, though the exact date is not indicated (Ex. B9F/2).  The colostomy was reversed in September 2022 and the colostomy bag was removed and an ileostomy bag was installed (AR 48; Exhibit B13F/4).

[5] As will be discussed below, pages 48–49 of the hearing transcript are the clearest articulation of the timeline of events and the worsening of her overall condition after the colostomy was replaced with the ileostomy in September 2022.  At other times the two procedures are seemingly referred to somewhat interchangeably, however, notwithstanding the blurring of the two procedures Plaintiff reported significant symptoms arising from both. Thus the 2022 colostomy reversal is still relevant as SSI benefits are potentially payable retroactive in this case to the March 11, 2021, Plaintiff's  SSI application date.  20 C.F.R. §§ 404.621, 416.335.

the time of her brother's suicide, "frequent nightmares," anxiety and depression, periods of decompensation with exacerbation, increase of symptoms, loss of adaptive functioning, and difficulties with ADLs, relationships and sleeping. AR 482–83.

On exam by Dr. Shertock, Plaintiff was found to be somber and depressed, could not recall detailed autobiographical information, couldn't remember 3 items after 3 minutes, could not spell "world" forwards or backward, couldn't calculate that seven monetary quarters equaled $1.75, could not repeat 1 digit forwards and 0 digits backward, judgment was questionable, couldn't interpret simple proverbs, fund of knowledge was impaired and couldn't name the first president or the current governor of California. AR 483. Dr. Shertock also noted that Plaintiff was reliable, put forth effort, was unable to adequately handle some responsibilities of daily living including hygiene and grooming, household duties, keeping appointments, and that her family did the housework. AR 484.

Dr. Shertock opined that Plaintiff was moderately impaired as to complex instructions, maintaining attention and concentration, maintaining adequate pace, withstanding the stress of an eight-hour day, maintaining adequate persistence while completing tasks, ability to endure the stress of the interview, ability to adapt to changes in routine work-related setting, ability to complete a normal workday or workweek without interruptions from her psychiatric condition, and had a questionable ability to interact with the public, supervisors and coworkers. AR 484

The ALJ rejected the opinion because:

> The opinion is based on a one-time examination with minimal objective findings and intact memory. It is also inconsistent with the claimant's high activities of daily living and no significant mental status findings throughout the medical record despite limited mental health treatment.

AR 24.

### 5. **Discussion**

At the outset, the Defendant's argument in support of the Agency's decision is

questionable to the extent that it unduly emphasizes the non-examining assessments (also known as "Prior Administrative Findings," or PAMFs) of Drs. Bergmann-Harms and Virk which were used at both the initial and reconsideration levels, and which largely supported the ALJ's RFC and non-disability determination.  Resp. at 3. It is initially important to note that non-examining opinions (aka PAMFs) have little independent evidentiary value.  See Williams v. Astrue, 2010 WL 3515744, at *4 (N.D. Cal. Sept. 8, 2010) (citing Orn, 495 F.3d at 632) ("A non-examining physician's opinion can constitute substantial evidence <u>if supported by independent clinical findings or other substantial evidence in the record</u>.) (emphasis added).  Specifically, the Commissioner's argument that the ALJ adequately addressed the supportability of these opinions because the ALJ found their "determinations were supported with discussion of <u>all available evidence</u>, such as her inability[6] to perform serial calculations" (AR 24; emphasis added), is undermined by the fact that these opinions, dated August 5, 2021 (AR 76) and December 2, 2021 (AR 109), predated the ileostomy bag placement in September 2022.

Although the Ninth Circuit has explained that there "is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time" (*Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020)), the ileostomy placement was a significant development causing Plaintiff worsening depression and pain, and had to be changed or released every 30 minutes. AR 48–49.  Thus, the August and December 2021 PAMFs of the medical consultants—Drs. Bergmann-Harms and Virk—could not have accounted for the ileostomy bag and the related difficulties experienced by Plaintiff because of it.

Defendant next explains, as the ALJ pointed out, that Plaintiff's function report indicated

---

[6] It's not clear how <u>inability</u> to perform serial calculations implies mental functionality.  Perhaps this is a typo, or the commissioner is suggesting that the medical experts provided a balanced overview of abilities and deficiencies alike.

she "got along well with others." AR 21 (citing AR 270). Although that phrase connotes friendly and agreeable, it does not suggest the absence of embarrassment due to the odor of her colostomy bag which she stated in her May 2, 2021 function report caused her avoidance of social interaction. This statement by Plaintiff would seemingly apply with equal force when the colostomy bag was switched out for an ileostomy bag that required gas release and drainage of gastric secretions, though that was not specifically stated by Plaintiff. AR 269.

Next, the ALJ addressed the July 6, 2021 consultative examination by Dr. Shertock who opined that Plaintiff had moderate limitations in virtually all aspects of mental functioning in consideration of: Plaintiff's somber and depressed mood, inability to recall detailed autobiographical information, inability to recall 3 items after 3 minutes, could not spell "world" forwards or backward, could not perform basic calculations, could not repeat 1 digit forwards and 0 digits backward, judgment was questionable, could not interpret simple proverbs, her fund of knowledge was impaired, and she could not name the first president or the current governor of California. AR 483.

Defendant contends that the ALJ appropriately rejected this opinion because it was "based on a onetime examination with minimal objective findings and intact memory." AR 24. However, to criticize Dr. Shertock's opinion because it is based on a "onetime examination" ignores the fact that this is the very nature of a consultative examination, especially as it is the agency itself that arranges the examination. Further, "minimal objective findings and intact memory" is simply not an appropriate characterization of the findings recited above, such as Plaintiff's inability to recall 3 items after 3 minutes.

Further, although repetitive, some clarification about the two stoma bag procedures is warranted given the murky and often blurred distinction between the two in the record. A colostomy bag was placed sometime between 2017 and 2018, though the precise date is not

specified. (Ex. B9F/2). It was subsequently removed in September 2022 (Exhibit B13F/4) and replaced with an ileostomy bag during the same procedure (AR 48; Exhibit B14F/3). The colostomy bag needed changing hourly to clear out solid waste while the ileostomy produced gas which needed to be released upwards of every 30 minutes, especially after eating. Id.

Plaintiff's testimony is the clearest explanation of this timeline of events and the impact thereof:

> Q: Okay. And your colostomy was removed in September '22, right?
> A: Yes.
> Q: Over a year ago? Okay.
> A: Yes.
> Q: And the ileostomy was done the same month.
> A: The same surgery day. Yes.
> Q: Okay. And you're saying that the ileostomy is caus you -- so you never have stopped having symptoms related to your colostomy and ileostomy?
> A: Yes.
> Q: With the ileostomy -- but you don't have a bag?
> A: Yeah. I do have a bag.
> Q: You have a bag? Okay. When they put the ileostomy instead of the -- well, after they removed the colostomy, what was the change in your functioning after that happened in September?
> A: I don't know. I just -- the change was me getting into depression. And then the ileostomy is more of a liquid. And there's a lot of, like, burping, a lot of gassing. And, like, I have to change it, like, in 30 to an hour, like, to just to let the air go.
> Q: Okay.
> A: And then my back was worse, too, than my colostomy.
> Q: Your back, you said?
> A: Yes. My back is hurting and my arm.

AR 47–49.

Although the distinction between hourly emptying with the colostomy bag, and emptying every 30 minutes with the ileostomy bag, may at first impression seem somewhat inconsequential, it is potentially very impactful on the vocational considerations at step five. Importantly, the VE testified that even 2 additional breaks of 15 minutes each, on top of normal breaks, would be work preclusive. The quoted discussion above would have been a key juncture to further flesh out in more detail: 1-the impact of the ileostomy bag changes/draining/gaseous release; 2- the frequency

11

thereof; 3- what exactly it entailed; 4- how that would interfere with work duties; and 5- to what extent that interference would, in the VE's view, preclude Plaintiff from performing jobs in the national economy. Having not done so, it was an unfortunate lost opportunity in the SSI determination.

As to the ALJ's alleged failure to incorporate Dr. Shertock's opined moderate limitations in the RFC, Defendant argues as follows:

> And, in any event, Plaintiff again fails to show that the ALJ harmfully erred here. Dr. Shertock opined Plaintiff had "moderate" limitations *in concentration, persistence, pace, and adaptation*. Tr. 484. These limitations comport with the ALJ's RFC finding. Tr. 22. In Stubbs Danielson v. Astrue, the Ninth Circuit explained that simple, routine, repetitive work was consistent with a doctor's opinion of "moderate" limitations *performing at a consistent pace*. 539 F.3d 1169, 1173-74 (9th Cir. 2008). Accordingly, the court held that the ALJ's RFC finding reasonably incorporated the doctor's moderate limitations. Id. At other times, the Ninth Circuit, relying on Stubbs-Danielson, has consistently found that "simple" and/or "repetitive" tasks account for "moderate" *concentration, persistence, or pace limitations*. See Lee v. Berryhill, 721 Fed. App'x. 604, 608 (9th Cir. 2017) (unpublished) ("the ALJ accounted for his finding that [claimant] had moderate difficulties in *concentration, persistence, or pace* by limiting [claimant] to 'simple repetitive tasks' because this limitation accorded with the restrictions discussed in the medical record"), citing Stubbs-Danielson, 539 F.3d at 1174; Turner v. Berryhill, 705 F. App'x 495, 498-99 (9th Cir. 2017) (unpublished) (ALJ's "RFC determination limiting [claimant] to 'simple, repetitive tasks,' … adequately encompasse[d] [claimant's] moderate difficulties in *concentration, persistence, or pace….*"), citing Stubbs-Danielson, 539 F.3d at 1174; Mitchell v. Colvin, 642 F. App'x 731, 733 (9th Cir. 2016) (following Stubbs-Danielson to conclude that a limitation to simple tasks properly incorporated moderate limitations in concentration, persistence, or pace). Moreover, this Court has recognized that "the Ninth Circuit and its district courts have [] concluded a claimant's low tolerance for stress or moderate limitations in dealing with changes are encompassed in an RFC of simple, repetitive tasks." Garza v. Comm'r of Soc. Sec., 2022 WL 2974691, at *11 (E.D. Cal. July 27, 2022) (collecting cases); see also Kimball v. Comm'r of Soc. Sec., 2022 WL 17343820, at *7 (E.D. Cal. Nov. 30, 2022) ("Plaintiff's moderate mental limitation in *adapting and managing herself* is adequately addressed by the RFC's functional limitations to simple tasks") (citing Garza, 2022 WL 2974691, at *12). Here, the ALJ found Plaintiff retained the RFC for simple work instructions, occasional changes in a routine work setting, and no production work. Tr. 22. As such, Dr. Shertock's "moderate" limitations in *concentration, persistence, pace, and adaptation* comport with the ALJ's RFC finding. Any error here was therefore harmless.

Resp. at 7–9 (emphasis added)

However, most if not all of Defendant's caselaw addresses only moderate limitations in concentration, persistence, pace and adaptation. Dr. Shertock's opinion, by contrast, not only identified limitations in those areas, but also identified limitations in nearly all areas of mental functioning including the ability to maintain attention and concentration for the duration of the evaluation, to maintain adequate pace while completing tasks, to withstand the stress of an eight-hour day, to maintain adequate persistence while completing tasks, the ability to endure the stress of an interview, to adapt to changes in routine work-related settings, and the ability to complete a normal workday or workweek without interruptions from the claimant's psychiatric condition. AR 484.

Finally, because Dr. Shertock's July 6, 2021 exam took place prior to the Plaintiff's ileostomy placement in September 2022, his opinion could not have taken into account any additional effects the ileostomy had on Plaintiff, such as increased depression and pain and the need for Plaintiff to change/release the bag as often as every 30 minutes. (AR 48–49).

**VI.   Findings**

Thus, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Remand is warranted for the ALJ to conduct a new hearing, issue a new decision, develop the record as necessary, and otherwise conduct further proceedings consistent with these Findings and Recommendations. See Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (noting that, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation.).

**VII.   Recommendations**

For the reasons stated above, the recommendation is that:

1. Plaintiff's motion for summary judgment (Doc. 15) be **GRANTED.**

2. Defendant's cross-motion (Doc. 17) be **DENIED.**

3. The matter be remanded to the Commissioner under sentence four of 42 U.S.C. §

405(g) for further proceedings consistent with the Findings and Recommendations.

4. That the Court Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

### VIII. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to the case per 28 U.S.C. § 636(b)(l). Within 14 days of these Findings and Recommendations, any party may file written objections. The document should be titled "Objections to Magistrate Judge's Findings and Recommendations." The failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **December 20, 2025**            **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE

14